# EXHIBIT A



**CT Corporation**
**Service of Process Notification**
05/11/2022
CT Log Number 541558356

## Service of Process Transmittal Summary

**TO:**   Josiah Rocha
SECURITAS SECURITY SERVICES USA, INC.
4330 Park Terrace Dr
Westlake Village, CA 91361-4630

**RE:**   **Process Served in Illinois**

**FOR:**   PARAGON SYSTEMS, INC.  (Domestic State: AL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: Vanessa Tabor // To: PARAGON SYSTEMS, INC. |
| **DOCUMENT(S) SERVED:** | Summonses, Civil Action Cover Sheet, Verified Complaint, Attachment(s), Notice(s), Request |
| **COURT/AGENCY:** | Cook County Circuit Court, IL Case # 2022L002040 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - 10/20/2020 |
| **PROCESS SERVED ON:** | National Registered Agents, Inc., Chicago, IL |
| **DATE/METHOD OF SERVICE:** | By Process Server on 05/11/2022 at 02:09 |
| **JURISDICTION SERVED:** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, exclusive of the day of service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | Kendra Spearman Spearman Law, LLC 150 S Wacker Drive, 24th Floor Chicago, IL 60606 312-788-2602 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/11/2022, Expected Purge Date: 06/10/2022

Image SOP

Email Notification,  Josiah Rocha  JOSIAH.ROCHA@SECURITASINC.COM

Email Notification,  Laura Polte  Laura.Polte@securitasinc.com

Email Notification,  Tori DiBlasi  tori.diblasi@securitasinc.com

Email Notification,  Tori DiBlasi  tori.diblasi@securitasinc.com |
| **REGISTERED AGENT CONTACT:** | National Registered Agents, Inc. 208 South LaSalle Street Suite 814 Chicago, IL 60606 866-331-2303 CentralTeam1@wolterskluwer.com |

Page 1 of  2

Ex. A, pg 1



**CT Corporation**
**Service of Process Notification**
05/11/2022
CT Log Number 541558356

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Ex. A, pg 2



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                       Wed, May 11, 2022
**Server Name:**                              Sheriff Drop

| | |
|---|---|
| Entity Served | PARAGON SYSTEMS, INC. |
| Case Number | 2022L002040 |
| Jurisdiction | IL |

| Inserts | | |
|---|---|---|
| | | |





* 5 0 1 6 6 9 9 7 *
FILED
5/3/2022 12:22 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L002040
Calendar, T
17743857

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Vanessa Tabor

Plaintiff(s)

v.

Paragon Systems Inc.

Defendant(s)

Case No. 2022 L 002040

401 S LaSalle St, #1202, Chicago, IL 60605

Address of Defendant(s)

Please serve as follows (check one):   Certified Mail   ✕ Sheriff Service   ✕ Alias

## SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE: Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3



**Summons - Alias Summons**

(03/15/21) CCG 0001 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

X Atty. No.: 61777

◯ Pro Se 99500

Name: Kendra Spearman

Atty. for (if applicable):

Plaintiff, Vanessa Tabor

Address: 150 S Wacker Drive, 24th Floor

City: Chicago

State: IL     Zip: 60606

Telephone: 312.788.2602

Primary Email: kendra@spearmanlaw.com

Witness date    5/3/2021 1:04 PM IRIS Y. MARTINEZ

Iris Y. Martinez, Clerk of Court

Service by Certified Mail: _____

Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3



* 5 0 1 6 6 9 9 7 *

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
            OR
          ChildSupCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:     (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:     (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:     (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:     (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:     (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:     (708) 232-4551

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, T



\* 5 0 1 6 6 9 9 7 \*
FILED
5/3/2022 12:22 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L002040
Calendar, T
17743857

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Vanessa Tabor
_____
                Plaintiff(s)

                v.                              Case No.    2022 L 002040

Paragon Systems Inc.
_____
                Defendant(s)

401 S LaSalle St. #1202, Chicago, IL 60605
Address of Defendant(s)

Please serve as follows (check one):    Certified Mail   ✕ Sheriff Service   ✕ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons**  • (03/15/21) CCG 0001 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

X Atty. No.: __61777__

◌ Pro Se 99500

Name: __Kendra Spearman__

Atty. for (if applicable):

__Plaintiff, Vanessa Tabor__

Address: __150 S Wacker Drive, 24th Floor__

City: __Chicago__

State: __IL__   Zip: __60606__

Telephone: __312.788.2602__

Primary Email: __kendra@spearmanlaw.com__

Witness date __5/3/2021 1:06 PM IRIS Y. MARTINEZ__

_____

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
   (To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3



*50166997*

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
                OR
                ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 3 of 3

earing Date: 6/30/2022 9:30 AM
ocation: Court Room 2005
Judge: Kubasiak, Daniel J.

**6-Person Jury**

Civil Action Cover Sheet - Case Initiation    (12/01/20) CCL 0520

* 5 0 1 6 6 9 9 7 *

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Vanessa Tabor

v.

Paragon Systems Inc

FILED
3/2/2022 9:59 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L002040
Calendar, T
16908947

No. _____

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ■ Yes ❑ No

**(FILE STAMP)**

**PERSONAL INJURY/WRONGFUL DEATH**
CASE TYPES:
- ❑ 027 Motor Vehicle
- ❑ 040 Medical Malpractice
- ❑ 047 Asbestos
- ❑ 048 Dram Shop
- ❑ 049 Product Liability
- ❑ 051 Construction Injuries
  (including Structural Work Act, Road Construction Injuries Act and negligence)
- ❑ 052 Railroad/FELA
- ❑ 053 Pediatric Lead Exposure
- ❑ 061 Other Personal Injury/Wrongful Death
- ❑ 063 Intentional Tort
- ❑ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ❑ 065 Premises Liability
- ❑ 078 Fen-phen/Redux Litigation
- ❑ 199 Silicone Implant

**TAX & MISCELLANEOUS REMEDIES**
CASE TYPES:
- ❑ 007 Confessions of Judgment
- ❑ 008 Replevin
- ❑ 009 Tax
- ❑ 015 Condemnation
- ❑ 017 Detinue
- ❑ 029 Unemployment Compensation
- ❑ 031 Foreign Transcript
- ❑ 036 Administrative Review Action
- ❑ 085 Petition to Register Foreign Judgment
- ❑ 099 All Other Extraordinary Remedies

By: Kendra Speaman _____
    (Attorney)          (Pro Se)

**COMMERCIAL LITIGATION**
CASE TYPES:
- ❑ 002 Breach of Contract
- ❑ 070 Professional Malpractice
  (other than legal or medical)
- ❑ 071 Fraud (other than legal or medical)
- ❑ 072 Consumer Fraud
- ❑ 073 Breach of Warranty
- ❑ 074 Statutory Action
  (Please specify below.**)
- ❑ 075 Other Commercial Litigation
  (Please specify below.**)
- ■ 076 Retaliatory Discharge

**OTHER ACTIONS**
CASE TYPES:
- ❑ 062 Property Damage
- ❑ 066 Legal Malpractice
- ❑ 077 Libel/Slander
- ❑ 079 Petition for Qualified Orders
- ❑ 084 Petition to Issue Subpoena
- ❑ 100 Petition for Discovery

** Wrongful discrimination based off race and genc

Primary Email: kendra@spearmanlaw.com

Secondary Email: _____

Tertiary Email: _____

**Pro Se Only:** ❑ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address: _____

### IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Page 1 of 1



* 5 0 1 6 6 9 9 7 *

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| VANESSA TABOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| PARAGON SYSTEMS INC | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT

NOW COMES the Plaintiff, VANESSA TABOR (hereinafter "MS. TABOR") by and through her attorneys, Spearman Law, LLC for her Complaint against Defendant, PARAGON SYSTEMS INC. (hereinafter "Defendant") and states as follows:

## PARTIES

1. Plaintiff, VANESSA TABOR (hereinafter "MS. TABOR"), is an African American woman residing in Chicago, Cook County, Illinois.

2. Defendant, PARAGON SYSTEMS INC is a corporation that is qualified to do business in Chicago, Cook County, Illinois and is doing business in Chicago, Cook County, Illinois.

## JURISDICTION AND VENUE

3. Venue is proper pursuant to 735 ILCS 5/2-101, as Defendant's office is in Cook County, Illinois. Furthermore, the incident that is the subject of this Complaint occurred in Cook County, Illinois.

1



* 5 0 1 6 6 9 9 7 *

4.  Venue is also proper in this Circuit Court of Cook County, Illinois insofar as all parties reside in Cook County, Illinois and the events giving rise to Plaintiff's claims occurred here.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.  To preserve and protect her rights and in compliance with the Illinois Human Rights ACT, ("IHRA"), On December 1, 2020, MS. TABOR filed a timely Charge of Discrimination, alleging claims of race and gender discrimination and retaliation in violation of the IHRA against the Defendant, with the Illinois Department of Human Rights, ("IDHR") ( Charge No. 2021CR086.) (Exhibit1)

6.  On December 7, 2021, the IDHR issued MS. TABOR a Dismissal for Lack of Substantial Evidence and Right to Commence Action with respect to her Charge against the Defendant, allowing her to leave to file in Circuit Court within ninety days of receipt.  A copy of the IDHR notice is attached as Exhibit 2.

7.  MS. TABOR received Exhibit 2 on January 19, 2022.

8.  Accordingly, MS. TABOR has exhausted her administrative remedies pursuant to statute and has timely filed this action within the requisite time frame.

## FACTS COMMON TO ALL ALLEGATIONS

9.  In June of 2018, MS. TABOR was hired as a Contractor through a temporary agency, Inside Global.

10. In June 2019 the Defendant hired MS. TABOR into a permanent position as an Administrative Assistant.

2



* 5 0 1 6 6 9 9 7 *

11. At all times, MS. TABOR met or exceeded Defendant's legitimate performance expectations.

12. During her employment with Defendant, MS. TABOR reported to Peter Moran, Contract Manager, a White male.

13. MS. TABOR's job duties as an administrative assistant included: front desk receptionist, receiving guest to the office; conducting payroll; reviewing applications and training packages of new hires, and scheduling training for new hires.

14. Unfortunately, enduring offensive conduct and behavior from Peter Moran was also a condition of MS. TABOR's employment.

15. Peter Moran constantly made disparaging remarks about MS. TABOR.

16. These comments were made to MS. TABOR in the presence of other employees and office guests.

17. For instance, Mr. Moran alluded that MS. TABOR was a "dog" which has been historically used as a derogatory term toward African Americans.

18. More specifically, in response to an issue with a representative from the technology department, Mr. Moran said: Don't worry about it, I'll sic Vanessa (MS. TABOR) on him."

19. When MS. TABOR would make general statements to her peers in the office Mr. Moran would interrupt and make the following comments: "That's a woman for you, or "Sounds like a 'Me Too' statement."

20. In addition to disparaging comments, throughout MS. TABOR's entire employment with Defendant, Mr. Moran interfered with MS. TABOR's work performance through intimidation, ridicule, mockery, insults, hostility, and abuse.



* 5 0 1 6 6 9 9 7 *

21. For example, after MS. TABOR changed her office desk placement in accord with her disability, Mr. Moran yelled and scolded MS. TABOR in front of the entire staff.

22. As equally as important, Mr. Moran treated MS. TABOR differently than similarly situated White and Male employees.

23. Throughout MS. TABOR's employment, Mr. Moran would not inform MS. TABOR about certain assignments and deadlines, which interfered with MS. TABOR fulfilling certain job tasks.

24. However, Mr. Moran did not behave in this manner with the male administrative assistance.

25. Furthermore, Mr. Moran would scream at MS. TABOR and badger her for simply saying: "good morning" to office guests.

26. Mr. Moran did not have a problem with the male administrative assistant simply saying: "good morning".

27. On or about September 9, 2019, MS. TABOR was trained to recruit new hires for the Defendant.

28. Accordingly, as a part of her duties MS. TABOR interacted and conversed with new hires.

29. During a conversation between MS. TABOR and a new hire, Mr. Moran violently and aggressively pushed open the office door and shouted at MS. TABOR: "He's here for an interview, not to listen to your stories."

30. Before MS. TABOR could respond, the interviewee responded to Mr. Moran by saying "MS. TABOR wasn't telling me a story, she was answering my questions regarding the "New Hire Packet."

4



* 5 0 1 6 6 9 9 7 *

31. As a recruiter for Defendant, everything pertaining to New Hire Trainees and their packets was MS. TABOR's responsibility, therefore she was acting within the purview of her job duties when he was wrongfully and unnecessarily scolded by Mr. Moran in front of the new hire.

32. On many occasions, Mr. Moran would deliberately assign MS. TABOR tasks that were not within her purview and then refuse MS. TABOR's request to stay beyond normal work hours to meet his unreasonable demands.

33. By contrast, Mr. Moran allowed White and Male employees to stay past normal work hours to complete tasks.

34. Ms. TABOR complained to Gordan Foxx, Mr. Moran's supervisor.

35. After MS. TABOR reported this incident to Mr. Foxx, Mr. Moran allowed MS. TABOR to stay longer to complete the tasks. (Mr. Foxx's intervention indicates how Mr. Moran's refusal was unreasonable)

36. On another instance, Dwayne Presswood, new hire trainee came to the Office to see Jerome McKinney, the male administrative assistant. As Mr. Presswood waited, MS. TABOR congratulated him on successfully completing the training and being hired.

37. Mr. Moran walked by MS. TABOR's desk and said in a belligerent tone "Vanessa, you have work to do so why are you talking?"

38. Furthermore, Mr. Moran constantly interfered with MS. TABOR's ability to communicate with her peers to fulfil essential job functions.

39. For instance, Mr. Moran slammed the door in MS. TABOR's face while MS. TABOR was speaking with one of her peers about a work task.

40. MS. TABOR reported this incident to Bryttany Gardner in Human Resources.

5



* 5 0 1 6 6 9 9 7 *

41. MS. TABOR was so emotionally distraught that Ms. Gardner offered to allow MS. TABOR to leave for the rest of the day with pay.

42. After MS. TABOR filed an EEOC complaint charge and complained to Human Resources about Mr. Moran's behavior, Mr. Moran begin monitoring MS. TABOR's daily activities, even those activities that were not within the purview of MS. TABOR's job duties.

43. Mr. Moran would monitor MS. TABOR's bathroom breaks, lunch breaks, and other breaks.

44. Mr. Moran did not behave this way with the male administrative assistant.

45. Additionally, Peter Moran required MS. TABOR to carbon copy him on all emails.

46. The male administrative assistant did not have to carbon copy Mr. Moran on e-mail communications.

47. Mr. Moran also instructed MS. TABOR to remain silent while in the office.

48. The other employees in the office were allowed to talk as desired.

49. Since Mr. Moran issued a "silence mandate" to MS. TABOR, MS. TABOR could not verbally communicate with her peers.

50. MS. TABOR had to communicate with her peers via text message.

51. Mr. Moran's "silence mandate" interfered with Ms. Tabor's work performance because she needed to communicate with her co-workers to complete tasks.

6



* 5 0 1 6 6 9 9 7 *

52. Despite Ms. Moran's interference, MS. TABOR received frequent comments of praise from other management about her work performance.

53. In response, Mr. Moran would remove MS. TABOR from tasks where she exceeded expectations.

54. Effective January 1, 2020, Lieutenant James Thurman was given the task of processing expense and mileage reports.

55. Despite knowing that expense reports were Mr. Thurman's responsibility, Mr. Moran had Lieutenant James Thurman send MS. TABOR one-hundred expense and milage reports from the Defendant's Springfield Office.

56. This task was not within the purview of MS. TABOR's job description.

57. When MS. TABOR inquired as to why the reports were sent to her. Mr. Moran responded: "just do the reports".

58. MS. TABOR reported this incident to Mr. Moran's supervisor, Gordon Foxx.

59. Mr. Foxx told MS. TABOR not to complete the task and to return the expense reports to Mr. Moran.

60. Afterwards, MS. TABOR heard Mr. Moran tell the other administrative assistant: "Vanessa (MS. TABOR) thinks she has the upper-hand because Gordon (Mr. Foxx) came to her rescue but there's ways of getting around him."

61. In response, Ms. Vanessa filed another "hostile work environment" complaint with the Equal Employment Opportunity Commission.

62. MS. TABOR also sent a letter to Mrs. Gardner in Human Resources.

63. Human Responded never responded, however.

7



* 5 0 1 6 6 9 9 7 *

64. On or about February 16, 2020, MS. TABOR received a call from Springfield Recruit Dane McClintock who was having some challenges completing his new hire packet.

65. MS. TABOR took the time to go over the packet with Mr. McClintock and simultaneously do her mid-week payroll submissions.

66. While MS. TABOR was speaking with Mr. McClintock, Mr. Moran walked over to MS. TABOR's desk and shouted very loudly: "You're supposed to be doing payroll. Why are you going over a new hire packet with a trainee."

67. Finally, while MS. TABOR was on medical leave, Mr. Moran searched MS. TABOR's personal property. This incident is on video.

68. On or about October 20, 2020, MS. TABOR was terminated for allegedly falsifying or tampering with W-4 Tax Form.

69. Upon information and believe, Defendant, has a scheme of accusing African American employees of "tampering with forms" as pretext for termination.

70. Finally, Mr. Moran would not allow MS. TABOR to return to the office to retrieve her personal property.

71. MS. TABOR was forced to meet another employee on the corner of Clark and Van Burn where she was caught in the middle of gun fire.

72. MS. TABOR had to endure with Mr. Moran's behavior daily.

73. Accordingly, MS. TABOR suffered extreme emotional distress.



* 5 0 1 6 6 9 9 7 *

## COUNT I
## RACE DISCRIMINATION – HARRASSMENT
## [775 ILCS 5/2101(E-1]

74. MS. TABOR reincorporates and re-alleges paragraphs 1-73 as if fully set forth herein.

75. MS. TABOR is an African American individual and is a protected person under the IHRA.

76. MS. TABOR was subjected to unwelcome harassment in the following ways:

    a. MS. TABOR was forced to endure daily harassment from her supervisor, Peter Moran.

    b. The harassment was intimidating, hostile, offensive, ridiculous, and abusive and interfered with MS. TABOR's work performance.

    c. The harassment was based on MS. TABOR's race.

77. As a consequence, MS. TABOR suffered damages in the form of lost wages and lost benefits, severe emotional distress, pain and suffering, humiliation, loss of reputation, lack of a positive employment reference, and incidental damages.

WHEREFORE, Plaintiff, VANESSA TABOR, seeks the following relief against Defendant:

    A. That this Court find that Defendant has violated the IHRA for discriminating against MS. TABOR;

    B. Award actual and compensatory damages in an amount to be determined at trial to fully compensate MS. TABOR for her injuries;

    C. Award pre-and post-judgment interest;



* 5 0 1 6 6 9 9 7 *

D. Award MS. TABOR punitive damages;

E. Award MS. TABOR her reasonable attorney's fees and cost; and

F. Award such other legal, equitable, and make-whole relief as this Court deems just and proper.

### COUNT II
### GENDER DISCRIMINATION -HARRASSMENT

### [775 ILCS 5/2101(E-1]

78. MS. TABOR reincorporates and re-alleges paragraphs 1-77 as if fully set forth herein.

79. MS. TABOR is an African American female and is a protected person under the IHRA.

80. MS. TABOR was subjected to unwelcome harassment in the following ways:

　　a. MS. TABOR was forced to endure daily harassment from her supervisor, Peter Moran.

　　b. The harassment was intimidating, hostile, offensive, ridiculous, and abusive and interfered with MS. TABOR's work performance.

　　c. The harassment was based on MS. TABOR's gender.

81. As a consequence, MS. TABOR suffered damages in the form of lost wages and lost benefits, severe emotional distress, pain and suffering, humiliation, loss of reputation, lack of a positive employment reference, and incidental damages.

WHEREFORE, Plaintiff, VANESSA TABOR, seeks the following relief against Defendant:

10



* 5 0 1 6 6 9 9 7 *

A. That this Court find that Defendant has violated the IHRA for discriminating against MS. TABOR;

B. Award actual and compensatory damages in an amount to be determined at trial to fully compensate MS. TABOR for her injuries;

C. Award pre-and post-judgment interest;

D. Award MS. TABOR punitive damages;

E. Award MS. TABOR her reasonable attorneys' fees and cost; and

F. Award such other legal, equitable, and make-whole relief as this Court deems just and proper.

## COUNT III
## RACE DISCRIMINATION-UEQUAL TERMS, PRIVLEDGES, AND CONDITIONS OF EMPLOYMENT
## [ 775 ILCS 5/2-102(A)]

82. MS. TABOR reincorporates and re-alleges paragraphs 1-81 as if fully set forth herein.

83. DEFENDANT has subjected MS. TABOR to unequal terms, privileges, and conditions of employment based on her race in the following ways:

   a. MS. TABOR was forced to endure daily harassment from her supervisor, Peter Moran.

   b. The harassment was intimidating, hostile, offensive, ridiculous, and abusive and interfered with MS. TABOR's work performance.

   a. MS. TABOR was given a mandate to remain silent while at work.

   b. DEFENDANT does not subject similarly situated non- African American employees to the same terms.

11



* 5 0 1 6 6 9 9 7 *

84. MS. TABOR repeatedly complained to Defendant about this discriminatory conduct, yet Defendant continually failed to take any reasonable measures to prevent discriminatory conduct against MS. TABOR.

85. As a consequence, MS. TABOR suffered damages in the form of lost wages and lost benefits, severe emotional distress, pain and suffering, humiliation, loss of reputation, lack of a positive employment reference, and incidental damages.

WHEREFORE, Plaintiff, VANESSA TABOR, seeks the following relief against Defendant:

A. That this Court find that Defendant has violated the IHRA for discriminating against MS. TABOR;

B. Award actual and compensatory damages in an amount to be determined at trial to fully compensate MS. TABOR for her injuries;

C. Award pre-and post-judgment interest;

D. Award MS. TABOR punitive damages;

E. Award MS. TABOR her reasonable attorneys' fees and cost; and

F. Award such other legal, equitable, and make-whole relief as this Court deems just and proper.

### COUNT III
### GENDER DISCRIMINATION-UEQUAL TERMS, PRIVLEDGES, AND CONDITIONS OF EMPLOYMENT
### [ 775 ILCS 5/2-102(A)

86. MS. TABOR reincorporates and re-alleges paragraphs 1-86 as if fully set forth herein.

12



* 5 0 1 6 6 9 9 7 *

87. DEFENDANT has subjected MS. TABOR to unequal terms, privileges, and conditions of employment based on her gender in the following ways:

    a. MS. TABOR was forced to endure daily harassment from her supervisor, Peter Moran.

    b. The harassment was intimidating, hostile, offensive, ridiculous, and abusive and interfered with MS. TABOR's work performance.

    c. MS. TABOR was given a mandate to remain silent while at work.

    d. DEFENDANT does not subject similarly situated male employees to the same terms.

88. MS. TABOR repeatedly complained to Defendant about is discriminatory conduct, yet Defendant continually failed to take any reasonable measures to prevent discriminatory conduct against MS. TABOR.

89. As a consequence, MS. TABOR suffered damages in the form of lost wages and lost benefits, severe emotional distress, pain and suffering, humiliation, loss of reputation, lack of a positive employment reference, and incidental damages.

WHEREFORE, Plaintiff, VANESSA TABOR, seeks the following relief against Defendant:

    A. That this Court find that Defendant has violated the IHRA for discriminating against MS. TABOR;

    B. Award actual and compensatory damages in an amount to be determined at trial to fully compensate MS. TABOR for her injuries;

    C. Award pre-and post-judgment interest;

13



* 5 0 1 6 6 9 9 7 *

D.  Award MS. TABOR punitive damages;

E.  Award MS. TABOR her reasonable attorneys' fees and cost; and

F.  Award such other legal, equitable, and make-whole relief as this Court deems just and proper.

## COUNT IV
## RETALIATION
## [775 ILCS 5/6-101 (A)]

90. MS. TABOR reincorporates and re-alleges paragraphs 1-89 as if fully set forth herein.

91. MS. TABOR engaged in numerous instances of protected activity where she repeatedly complained that DEFENDANT had been subjecting her to discriminatory terms and conditions of her employment based on her race and gender.

92. In response to MS. TABOR's engagement in protected activity, DEFENDANT. harassed MS. TABOR, placed her on leave without a legitimate reason, searched her belongings, ridiculed her, humiliated her, and terminated her without justification.

93. As a consequence, MS. TABOR suffered damages in the form of lost wages and lost benefits, severe emotional distress, pain and suffering, humiliation, loss of reputation, lack of a positive employment reference, and incidental damages.

WHEREFORE, Plaintiff, VANESSA TABOR, seeks the following relief against Defendant:

A.  That this Court fund that Defendant has violated the IHRA for discriminating against MS. TABOR;

14

B. Award actual and compensatory damages in an amount to be determined at trial to fully compensate MS. TABOR for her injuries;

C. Award pre-and post-judgment interest;

D. Award MS. TABOR punitive damages;

E. Award MS. TABOR her reasonable attorneys' fees and cost; and

F. Award such other legal, equitable, and make-whole relief as this Court deems just and proper.

G. **PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully Submitted,


/s/ **Kendra D. Spearman**

**Kendra D. Spearman** (ARDC No. 6324689)
Attorney for Plaintiff
Spearman Law, LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
312.788.2602
kendra@spearmanlaw.com


## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant by Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in the foregoing instrument are true and correct, except as to matters therein stated to be on information and belief, and as such matters, the undersigned certifies as aforesaid that I verily believe the same to be true.

**VANESSA TABOR**

15



* 5 0 1 6 6 9 9 7 *

## ATTORNEY CERTIFICATION

I certify, as attorney of record in this cause, that I have read the above, and that to the best of my knowledge, information, and belief, formed after reasonable inquiry of my client, it is well grounded in fact and is warrened by existing law or a good faith argument for the extension, modification, or reversal of exiting law, and that is it not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

By: /s/ **Kendra D. Spearman**

**Kendra D. Spearman** (ARDC No. 6324689)
Attorney for Plaintiff
Spearman Law, LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
312.788.2602
kendra@spearmanlaw.com

16

Ex. A, pg 26



* 5 0 1 6 6 9 9 7 *

# EXHIBIT 1

17





* 5 0 1 6 6 9 9 7 *

# EXHIBIT 2

18

STATE OF ILLINOIS )
) ss
COUNTY OF COOK )

CHARGE NO: ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

\* 5 0 1 6 6 9 9 7 \*

### AFFIDAVIT OF SERVICE

Osmin Villalpando deposes and states that s/he served a copy of the attached

**NOTICE OF DISMISSAL FOR LACK OF JURISDICTION AND LACK OF**

**SUBSTANTIAL EVIDENCE** on each person named below by depositing

the same on December 7, 2021 , in the U.S. Mail Box at 555 West Monroe

Street, Chicago, Illinois, properly posted for FIRST CLASS MAIL,

addresses as follows:

**For Complainant**

Kendra Spearman
Spearman Law, LLC
150 S. Wacker Dr
24th Floor
Chicago, IL 60606

**For Respondent**

Jackeline Lara
Securitas Security
Services USA, Inc.
4330 Park Terrace Dr.
Westlake Village, CA 91361

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the
undersigned certifies that the statements set forth in this instrument are true and correct, except as to
matters therein stated to be on information and belief and as to such matters the undersigned certifies as
aforesaid that s/he verily believes the same to be true.

Osmin Villalpando

**PLEASE NOTE:**

The above-signed person is responsible only for mailing these documents. If you wish a
review of the findings in this case, you must complete the Request for Review
form attached. Department of Human Rights' staff are not permitted to discuss the
investigation findings once a Notice of Dismissal has been issued.

FILED DATE: 3/2/2022 9:59 AM 2021L002040

FILED DATE: 3/2/2022 9:59 AM  2021L002040

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:
VANESSA TABOR,

              COMPLAINANT,        CHARGE NO.     2021CR0861

AND                                   EEOC NO.        N/A

PARAGON SYSTEMS, INC.,

              RESPONDENT.

## NOTICE OF DISMISSAL FOR LACK OF JURISDICTION AND LACK OF SUBSTANTIAL EVIDENCE

**For Complainant**

Kendra Spearman
Spearman Law, LLC
150 S. Wacker Dr
24th Floor
Chicago, IL 60606

**For Respondent**

Jackeline Lara
Securitas Security
Services USA, Inc.
4330 Park Terrace Dr.
Westlake Village, CA 91361

DATE OF DISMISSAL: December 7, 2021

## DISMISSAL FOR LACK OF JURISDICTION

1. YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the DEPARTMENT OF HUMAN RIGHTS (Department) has determined that there is NOT jurisdiction to pursue the following allegation(s) of the charge:

    **G, H, I, K, and L**

Accordingly, pursuant to Section 7A-102(D) of the Illinois Human Rights Act (Act) (775 ILCS 5/3-101 et seq.) and the Department's Rules and Regulations (56 Ill. Adm. Code, Chapter II, §2520.560) the charge is HEREBY DISMISSED.

## DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE

2. YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the Department has determined that there is NOT substantial evidence to pursue the following allegation(s) of the charge:

    **B, C, Q, R, W, X, and BB**

Accordingly, pursuant to Section 7A-102(D) of the Act (775 ILCS 5/1-101 et seq.) and the Department's Rules and Regulations, (56 Ill. Adm. Code, Chapter II, 2520.560) the charge is HEREBY DISMISSED.

FILED DATE: 3/2/2022 9:59 AM   2021L002040

Page 2
Notice of Dismissal for Lack of Jurisdiction And Lack of Substantial Evidence
Charge No. 2021CR0651

\* 5 0 1 6 6 9 9 7 \*

### SEE ENCLOSED INVESTIGATION REPORT

3.  If Complainant disagrees with this action, Complainant may:

    a)  Seek review of this dismissal before the Illinois Human Rights Commission (Commission), 100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a "Request for Review" with the Commission by the request for review filing date below.  Respondent will be notified by the Commission if a Request for Review is filed.

    **REQUEST FOR REVIEW FILING DEADLINE DATE: March 14, 2022**
    Or, Complainant may:

    b)  Commence a civil action in the appropriate state circuit court within ninety (90) days of receipt of this Notice.  A complaint should be filed in the Circuit court in the county in which the civil rights violation was allegedly committed. If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately.  The EEOC generally adopts the Department's findings.  The Appellate Courts in Watkins v. Office of the State Public Defender, _____ Ill.App.3d _____, 976 N.E.2d 387 (1st Dist. 2012) and Lynch v. Department of Transportation, _____ Ill.App.3d _____, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Act against the State of Illinois in the Illinois Circuit Court are barred by the State Lawsuit Immunity Act. 745 ILCS 5/1 et seq. Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

**PLEASE NOTE: The Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

4.  Complainant is hereby notified that the charge(s) will be dismissed with prejudice and with no right to further proceed if a timely request for review is not filed with the Commission, or a timely written complaint is not filed with the appropriate circuit court.

* 5 0 1 6 6 9 9 7 *

FILED DATE: 3/2/2022 9:59 AM 2022L002040

5. If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC). If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal. Please note that in order to receive such a review by the EEOC, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice. However, if Complainant chooses to file a timely "Request for Review" of this dismissal with the Illinois Human Rights Commission, then Complainant must wait until receipt of a final notice/order by the Commission before requesting a Substantial Weight Review by the EEOC. Complainant must make a written request for Substantial Weight Review by the EEOC within fifteen (15) days of the receipt of the Human Rights Commission's final notice/order. Any request filed prior to your receipt of a final notice/order WILL NOT BE HONORED. Send your request for a Substantial Weight Review to EEOC, John C. Kluczynski Federal Building, 230 South Dearborn Street, Suite 1866, Chicago, Illinois 60604. Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

DEPARTMENT OF HUMAN RIGHTS
James L. Bennett
Director

FILED DATE: 3/2/2022 9:59 AM 2021.002040

**STATE OF ILLINOIS**
**HUMAN RIGHTS COMMISSION**

```
* 5 0 1 6 6 9 9 7 *
```

IN THE MATTER OF:                )
VANESSA TABOR,                   )
                                 )
                                 )
                    COMPLAINANT, )   CHARGE NO.    2021CR0661
AND                              )   EEOC NO.      N/A
                                 )
PARAGON SYSTEMS, INC.,           )
                                 )
                                 )
                                 )
                                 )
                    RESPONDENT.  )

**REQUEST FOR REVIEW**

Kendra Spearman                    Jackeline Lara
Spearman Law, LLC                  Securitas Security
150 S. Wacker Dr                   Services USA, Inc.
24th Floor                         4330 Park Terrace Dr.
Chicago, IL 60606                  Westlake Village, CA 91361

**TO:** VANESSA TABOR,

**DATE OF DISMISSAL:** December 7, 2021

**REQUEST FOR REVIEW FILING DEADLINE DATE: March 14, 2022**

I hereby request that the dismissal of the charge by the Illinois Department of
Human Rights (Department) be reviewed by the Illinois Human Rights
Commission (Commission).

Complainant's Current Address (please print clearly):

_____ Apt/Unit #_____

City_____ State_____ Zip_____ Phone (____)_____

* 5 0 1 6 6 9 9 7 *

FILED DATE: 3/2/2022 9:59 AM 2022L002040

**IN THE SPACE PROVIDED BELOW, YOU MUST LIST AND DESCRIBE THE SPECIFIC REASONS THAT THE CHARGE SHOULD NOT HAVE BEEN DISMISSED. If applicable, you may write on the back of this form or attach additional information or documents, which support your Request for Review. You may review your investigation file to help you prepare your request by calling (312) 814-6262 or (217) 785-5100. The Department's investigation file may be reviewed or copied upon request once the Department's investigation has been completed. The Department is not responsible for copy service fees. A minimum of three (3) business days' notice is required. Call (312) 814-6262 to make arrangements.**

SIGNATURE

DATE

**YOU MUST ENCLOSE THE ORIGINAL AND THREE COPIES, INCLUDING SUPPORTING DOCUMENTS, OF YOUR ENTIRE REQUEST AND YOU MUST SIGN, DATE AND HAVE THIS FORM POSTMARKED OR HAND DELIVERED BY THE FILING DEADLINE DATE ABOVE, TO:**

**Illinois Human Rights Commission, 100 West Randolph Street, Suite 5-100, Chicago, IL 60601; Telephone: (312) 814-6269; TDD: (312) 814-4760.**

Please note that pursuant to Section 5300.410 of the Commission's Procedural Rules (56 Ill. Admin. Code §5300.410), except by permission of the Commission, the request, argument and supporting materials shall not exceed 45 pages.

Further, note that pursuant to 56 Ill. Admin. Code § 5300.40(b) of the Commission's Procedural Rules, all arguments in support of the Request for Review must be written on 8 ½" x 11" paper. Any argument submitted on non-conforming paper, such as a "post-it" note, will not be considered part of the Request for Review and will be disregarded by the Commission.

**THIS FORM MAY NOT BE SENT VIA TELEFAX.**
HB1509/HB59 HRC R/R 07/2021

FILED DATE: 3/2/2022 9:59 AM   2021.002040

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**
**INVESTIGATION REPORT**



| | | |
|---|---|---|
| **Complainant:** | Vanessa Tabor | **IDHR No.:** 2021CR0861 |
| **Respondent:** | Paragon Systems, Inc. | **EEOC No.:** N/A |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Investigator:** | RMW | **Supervisor:** | MFJ | | **Date:** | 11/23/21 |

**Issue/Basis:**                                                                                 **Finding:**

| | | | |
|---|---|---|---|
| A. | Harassment/Age, 61[1] | A. | Closed |
| B. | Harassment/Sex, female | B. | Lack of Substantial Evidence |
| C. | Harassment/Race, black | C. | Lack of Substantial Evidence |
| D. | Harassment/Disability, breast cancer | D. | Closed |
| E. | Harassment/Disability, depression | E. | Closed |
| F. | Harassment/Disability, anxiety | F. | Closed |
| G. | Failure to Accommodate/Disability, breast cancer | G. | Lack of Jurisdiction |
| H. | Failure to Accommodate /Disability, depression | H. | Lack of Jurisdiction |
| I. | Failure to Accommodate /Disability, anxiety | I. | Lack of Jurisdiction |
| J. | Written Warning/Age, 61 | J. | Closed |
| K. | Written Warning /Sex, female | K. | Lack of Jurisdiction |
| L. | Written Warning /Race, black | L. | Lack of Jurisdiction |
| M. | Written Warning /Disability, breast cancer | M. | Closed |
| N. | Written Warning /Disability, depression | N. | Closed |
| O. | Written Warning /Disability, anxiety | O. | Closed |
| P. | Suspension/Age, 6) | P. | Closed |
| Q. | Suspension /Sex, female | Q. | Lack of Substantial Evidence |
| R. | Suspension /Race, black | R. | Lack of Substantial Evidence |
| S. | Suspension /Disability, breast cancer | S. | Closed |
| T. | Suspension /Disability, depression | T. | Closed |
| U. | Suspension /Disability, anxiety | U. | Closed |
| V. | Discharge/Age, 61 | V. | Closed |
| W. | Discharge/Sex, female | W. | Lack of Substantial Evidence |
| X. | Discharge/Race, black | X. | Lack of Substantial Evidence |
| Y. | Discharge /Disability, breast cancer | Y. | Closed |
| Z. | Discharge /Disability, depression | Z. | Closed |
| AA. | Discharge /Disability, anxiety | AA. | Closed |
| BB. | Discharge/Retaliation | BB. | Lack of Substantial Evidence |

**Staff Note:** Complainant's charge indicates that she was subjected to harassment, bullying and exclusion from August 2019 through August 2020; disciplined in August 2019; requested a reasonable accommodation, which was provided, in August 2020; and was discharged.

---

[1] Although Complainant's charge indicates that Complainant alleges that she was discriminated against based on age, 62, Complainant informed staff that in 2019 she was 61 years of age.

FILED DATE: 3/2/2022 9:59 AM 2021L002040

Charge No.: 2021CR0161
Page 2 of 12

Complainant's charge indicates that Complainant believes she had been discriminated against because of her disabilities and in retaliation for engaging in a protected activity. Complainant's charge indicates that in addition, Complainant believes that she had been discriminated against because of her sex, female, race, black and age, 62. During the Complainant interview, Complainant informed staff that she does not feel like she was discriminated against based on her age and disabilities and that Respondent was not made aware of her disabilities. Complainant agreed to withdraw the counts alleging that she was harassed, disciplined/written warning, disciplined/suspended, and discharged based on age, 61 and disabilities, depression, anxiety and breast cancer. Complainant did not request to withdraw the action of requesting a reasonable accommodation.

## Jurisdiction:

Alleged violations:

| | |
|---|---|
| A. | June 2019-November 2019 |
| B. | June 2019-November 2019 |
| C. | June 2019-November 2019 |
| D. | June 2019-November 2019 |
| E. | June 2019-November 2019 |
| F. | June 2019-November 2019 |
| G. | July 2019[2] |
| H. | July 2019 |
| I. | July 2019 |
| J. | July 2019[3] |
| K. | July 2019 |
| L. | July 2019 |
| M. | July 2019 |
| N. | July 2019 |
| O. | July 2019 |
| P. | August 18, 2020 |
| Q. | August 18, 2020 |
| R. | August 18, 2020 |
| S. | August 18, 2020 |
| T. | August 18, 2020 |
| U. | August 18, 2020 |
| V. | October 30, 2020 |
| W. | October 30, 2020 |
| X. | October 30, 2020 |
| Y. | October 30, 2020 |
| Z. | October 30, 2020 |
| AA. | October 30, 2020 |
| BB. | October 30, 2020 |

[2] Although Complainant's charge indicates that in August 2020 Complainant requested a reasonable accommodation, which was granted, during the Complainant interview, Complainant informed staff that in July 2020 she requested an accommodation, which was not granted, and that was the only accommodation she requested; however, the investigation revealed that Complainant's alleged accommodation request occurred in July 2019.
[3] Although during the Complainant interview, Complainant alleged that in July 2020 Respondent issued her a written warning, the investigation revealed that Complainant was issued a final written warning in July 2019.

Charge No. 2021CN0061
Page 1 of 22

Charge filed:                                      December 1, 2020
Charge perfected:                                  December 15, 2001
Amendments:                                        None
Number of employees:                               296

**Verified Response:**

Note: Pursuant to Public Act 100-0492, a Verified Response ("VR") is not required for a charge filed on or after September 8, 2017.

**Employment Data:**

Respondent's Employment Data for payroll period December 15, 2018, through December 31, 2018, (Exhibit A) indicates that Respondent employed 296 individuals, of which 168 were race, black and 58 were sex, female.

**Uncontested Facts:**

1.      Respondent is a security company.

2.      In June 2019 Respondent hired Complainant as an Administrative Assistant.

3.      In August 2020 Respondent suspended Complainant, pending investigation, for allegedly falsifying federal documents.

4.      At the conclusion of an investigation, on October 30, 2020, Respondent discharged Complainant.

**Count A:**

**Closed**

**Complainant's Allegations-Counts B&C:**

Complainant alleges that in June 2018 Respondent hired her as a Contractor through a temporary agency, Inside Global, and a few weeks later she received a permanent assignment at Respondent. Complainant alleges that in June 2019 Respondent offered her an Administrative Assistant position. Complainant alleges that beginning in June 2019 and continuing through September 2019, Respondent subjected her to discriminatory harassment due to her sex, female (Count B) and/or race, black (Count C). Complainant alleges that the harassment consisted of Peter Moran (non-black, disability status unknown), Contract Manager, making disparaging remarks and yelling at her. Respondent is strictly liable for the conduct of its management staff. Complainant alleges that the harassment created such a hostile and offensive work environment that it interfered with her ability to successfully perform the duties of her job.

**Respondent's Defenses-Counts B&C:**

FILED DATE: 3/2/2022 9:59 AM   2022L002040

Charge No. 2021CN0001
Page 1 of 21


*501 66 997*

Respondent denies that Complainant was subjected to any form of discriminatory harassment.

**Investigation Summary- Counts B&C:**

A.   **Complainant's Evidence.**

1.   Complainant stated that Respondent is an armed security company. Complainant stated that Respondent's parent company is Securitas, a foreign company.

2.   Complainant stated that in June 2018 Respondent hired her as a Contractor through a temporary agency, Inside Global, and a few weeks later she received a permanent assignment at Respondent. Complainant alleges that in June 2019 Respondent offered her an Administrative Assistant position. Complainant stated that in September 2019 she was given additional tasks and her job title changed to Assistant/Recruiter. Complainant stated that the recruiter position was created. Complainant stated that Respondent did not have a recruiter in the local area.

3.   Complainant stated that her job duties entailed front desk receptionist duties; receiving clients, vendors and visitors; payroll; reviewing applicants that met benchmarks needed to be considered for hire; new hire training packets; and scheduling training classes. Complainant stated that she exceeded job expectations.

4.   Complainant stated that Respondent became aware of her sex and race from her personnel records in June 2019 at the time of hire.

5.   Complainant stated that in June 2019, Peter Moran (male, non-black, disability status unknown), Contract Manager, began making disparaging remarks. Complainant stated that Moran said that if she could not take care of "it" then he would "sic the master". Complainant stated that she told him that she did not appreciate the comment, but he laughed.

6.   Complainant stated that she would say good morning to her coworkers and Moran would tell her that she was not there to make friends, but she was there to work. Complainant stated that she made known her displeasure.

7.   Complainant stated that Moran would not keep her in the loop as far as tasks, she was placed on deadlines and he spoke negatively about her to her colleagues.

8.   Complainant stated that in August 2019 Moran began badgering her daily. Complainant stated that for seven days Moran did not allow her to stay past her normal work hours.

FILED DATE: 3/2/2022 9:59 AM 2021L002040

9. Complainant stated in March 2020 that she had a meeting with Barbara Gardner (female, non-black), Director of Office of Responsibility, about her relationship with Moran and the challenges they faced. Complainant stated that after her report Moran informed her that their interaction would be limited and she should report to Jerome McKinney (black, male, over 40), Scheduler/Administrative Assistant, unless he was not in the office.

10. Complainant stated that on August 10, 2020, Moran badgered her about payroll deadlines and questioned her about her progress throughout the day.

11. Complainant stated that in November 2020 Moran slammed the door in her face.

12. Complainant stated that when she would make a statement regarding the Me Too Movement, Moran would say that she was a woman, and of course she would agree.

13. Complainant stated that Moran never said anything about race because he knew better.

14. Complainant stated that she was harassed based on the fact she is a black female.

**Staff Note:** In Complainant's response to the Complainant Questionnaire, on the question asking if anyone made statements about her disability, race or sex, Complainant responded saying that no one in Respondent's office ever made direct statements about her physical disability status, race or sex; however, Moran on occasion would make sexist remarks when there was a general conversation between herself and her coworkers.

**B.    Respondent's Evidence.**

1. Respondent's Equal Employment Opportunity-Affirmative Action Policy Statement (Exhibit B) indicates that it is the policy of Respondent to provide equal employment opportunities without regard to race/ethnicity, color, national origin, ancestry, sex/gender, gender identity/expression, sexual orientation, marital/parental status, pregnancy/childbirth or related conditions, religion, creed, age, disability, genetic information, veteran status or any other status protected by local, state, or federal law. The policy indicates that the policy relates to all phases of employment, including, but not limited to, recruiting, employment, placement, promotion, transfer, demotion, reduction of workforce and termination, rates of pay or other forms of compensation, selection for training, the use of all facilities, and participation in all company-sponsored activities.

2. Respondent's Harassment and Intimidation Policy (Exhibit C) indicates that Respondent is committed to maintaining a work environment that is

FILED DATE: 3/2/2022 9:59 AM 2021.002040

Charge No. 2021CW0061
Page 6 of 21



free from offensive behavior and unreasonable interference, intimidation, or hostility on the part of managers, coworkers, vendors, customers, 9 7 vendors, and everyone present in an employee's work environment. The policy indicates that unwelcome racial or sexual conduct that interferes with an individual's job performance or creates an intimidating, hostile or offensive environment is strictly prohibited.

3. Brittany Gardner (non-black, female), Director of Office of Responsibility, stated that Complainant was hired on a temporary to permanent basis as a Contract Administrator Assistant. Gardner stated that Complainant assisted the SPF Illinois Contract Office that was based out of Chicago which provides security services for the federal government across Illinois.

4. Gardner stated that in June 2019 Complainant was hired on permanently in the same job role. Gardner stated that Complainant's main job duties entailed supporting effective applications of contract, onboarding of personnel, assisting in the application process, payroll, processing, leave submissions and other functions supporting the contract. Gardner stated that as a temporary employee Complainant's work performance was stellar, and she was very willing to accomplish tasks with no guidance or leadership. Gardner stated that there was a change in Complainant's performance once she was full-time. Gardner stated that Complainant failed to meet expectations as a full-time employee.

5. Respondent's Administrative Assistant Job Description (Exhibit D) indicates that the essential duties and tasks include: reviewing time and attendance sheets, wage computation and other information to detect and reconcile payroll discrepancies; computing wages and reviewing time and attendance and entering data into the computer; reviewing, coding and forwarding billing documents to the Finance Department according to company guidelines; obtaining, recording and forwarding request entry to HRIS data for each employee on contract, including information such as addresses, absences, FMLA requests for terminations and notifies FPS and FSO of all terminations; processing new hires through HMS, finger printing new hires/incumbents for licensing purposes, maintaining an extensive local training matrix tracking nearly 25 items per individual; etc.

6. Gardner stated that Peter Moran (male, non-black, disability status unknown), Contract Manager, was Complainant's supervisor.

7. Gardner stated that she was aware of Complainant's age due to having access to the human resources system personnel records. Gardner stated that she met Complainant personally, so she was aware of her sex and race.

8. Moran stated that he has no knowledge about a comment made about "sic the master". Moran stated that there were many occasions where Complainant was more involved with more going on in the training room



instead of working so he may have made a comment that she should be more focused on work instead of training classes.

9. Moran stated that payroll has a deadline to be completed by Friday and new hire packets has a deadline to be completed by the Wednesday prior to class starting. Moran stated that there were times where the deadlines were not met but they worked through it and got things taken care of. Moran stated that payroll is Respondent's policy and new hire packets are a human resources policy; not policies that he created.

10. Moran stated that he has never had words cross his lips about Complainant being a woman. Moran stated that he has not made any gender comments.

11. Moran stated that Complainant did not complain about his behavior. Moran stated that there have been no other complaints about him from colleagues.

12. Gardner stated that Complainant did not complain of harassment. Gardner stated that after receiving a counseling in August or September of 2019, Complainant complained about her disagreement with the counseling.

**Staff Note:** On September 13, 2021, staff mailed Respondent a request for further information requesting that Respondent provide documentation of any reports of harassment made by Complainant including any memos, emails and/or investigative reports. On October 5, 2021, Respondent responded informing staff that Complainant did not bring forth any type of concern regarding Moran throughout her employment. Respondent informed staff that Complainant's administrative charge is its first knowledge of Complainant's allegations of alleged harassment, bullying and exclusion; however, Respondent was unable to obtain any evidence that would support or substantiate the reported concerns.

13. Gardner stated that Jerome McKinney (black, male), Scheduler/Administrative Assistant, is not a supervisor; he is a peer who reports to Moran so it is not accurate that Complainant would have reported to McKinney. Gardner stated that McKinney is in the same role as Complainant.

C. **Complainant's Rebuttal.**

1. Complainant did not provide any additional information other than what was previously identified in Complainant's section.

**Analysis-Counts B&C:**

It is uncontested that in June 2019 Respondent hired Complainant on as a permanent Administrative Assistant. Complainant alleges that beginning in June 2019 and continuing through September 2019, Respondent subjected her to discriminatory harassment due to her sex, female and/or race, black, when Moran made disparaging remarks and yelled at her. Respondent

FILED DATE: 3/2/2022 9:59 AM   2021L002040

FILED DATE: 3/2/2022 9:59 AM   2021.002040

Charge No. 2021CN0861
Page 8 of 23



is strictly liable for the conduct of its management staff. Respondent denies that Complainant was subjected to discriminatory harassment. Respondent maintains that at no time throughout Complainant's employment, did she report harassment.

Complainant alleges that Moran made disparaging remarks and badgered her daily by not allowing her to stay past her normal work hours and questioning her about payroll deadlines and her progress throughout the day. Complainant alleges that Moran said that he would "sic the master" and slammed the door in her face. Complainant concedes that Moran did not make any comments relating to her race. Respondent denies that any disparaging comments were made to Complainant and maintains that there were times that deadlines were not met, but they worked through it and got things taken care of.

### Findings and Conclusion-Counts B&C:

A finding of **Lack of Substantial Evidence** is recommended because Complainant's allegations do not rise to the level of discriminatory harassment. Although Complainant alleges that Respondent subjected her to harassment based on her sex and/or race, Complainant concedes that no direct disparaging comments were made towards her due to her protected categories. Furthermore, although Complainant alleges that the harassment consisted of Moran badgering her daily, Complainant failed to provide examples of comments Moran made on a daily basis. Complainant has failed to show that Respondent had an animus towards her due to her sex or race and failed to show that Moran's comments or actions were egregious in nature or that they occurred on an ongoing and continuing basis that it would interfere with her duties to perform her job duties. Therefore, a lack of substantial evidence is recommended.

### Findings-Counts D,E,F:

### Closed

### Findings-Counts G,H,I:

Complainant alleges that in June 2018 Respondent hired her as a Contractor through a temporary agency, Inside Global, and a few weeks later she received a permanent assignment at Respondent. Complainant alleges that in June 2019 Respondent offered her an Administrative Assistant position. Complainant alleges that she is a disabled individual per Section 1-103(I) of the Illinois Human Rights Act and Respondent was made aware of her disabilities, breast cancer (Count G), depression (Count H) and anxiety (Count I). Complainant alleges that in November 2019 she was diagnosed with depression and anxiety. Complainant stated that she made Karina Meige (female; age, race and disability status unknown), HR Generalist, aware in November 2019. Complainant alleges that in July 2020[4] she requested an accommodation to have her desk moved but was denied. Complainant further alleges that she was able to perform the essential functions of her job with or without an accommodation.

---

[4] Although Complainant alleges that in July 2020 she requested a reasonable accommodation to have her desk moved, the investigation revealed that the request was made in July 2019.

FILED DATE: 3/2/2022 9:59 AM 2022L002040

Charge No. 2011CN0001
Page 5 of 23



Complainant's charge indicates that in or around August 2020 she requested a reasonable accommodation, which was provided. During the investigation, Complainant alleged that in July 2020 she requested that her desk be situated against the wall because she is a survivor of domestic violence, which contributed to her anxiety. A Clinical Visit Summary (Exhibit E) indicates that on February 8, 2021, Complainant was seen at Winfield Moody Health Center by Emily Robertson-Shelby, APN. The summary indicates that Complainant's care plan and instructions include anxiety: continue escitalopram-continue counseling.

Respondent denies that Complainant requested a reasonable accommodation. Respondent's Non-Discrimination on the Basis of Disability Policy (Exhibit F) indicates that in support of our nation's commitment to equal employment opportunity and in accordance with the provisions of the Americans with Disabilities (ADA) and other applicable federal and state laws, no program or activity administered by Respondent shall exclude from participation, deny benefits to or subject to discrimination any individual solely by reason of his or her disability, and Respondent will enter into an interactive process and attempt to provide a reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled employee or applicant. Respondent maintains that at the end of July 2019 Respondent moved office space and since Complainant directed trainees to the classroom and greeted those who came into the office, Complainant's desk faced the door and was set up to utilize space efficiently and to allow those entering to get by. Respondent maintains that Complainant was trying to instruct others to move her desk to a different format which would have blocked the entrance, but it was explained to Complainant why her desk was there and why her desk would remain there.

**Staff Note:** In Respondent's position statement and in Respondent's response to the Department's Request for Further Information, Respondent informed staff that on or around late July 2019, the local site office to which Complainant was assigned to, was being relocated to a new building, and during this move, Complainant expressed to Moran that she would like for her desk to be located privately in the back; however, at no time did Complainant ever mention that the placement of her desk was due to a request for an accommodation.

Although Complainant alleges that in July 2020 she requested an accommodation to have her desk situated against the wall, the investigation revealed that Complainant requested to have her desk moved in July 2019. On December 1, 2020, Complainant filed her charge, over 400 days after Complainant's alleged harm. Further, the investigation revealed that Complainant was not diagnosed with, and did not inform Respondent of her diagnosis of, anxiety until November 2019, four months after her alleged harm.

Section 7A-102(A)(1) of the Human Rights Act states that a charge must be filed within 300 days after the date an alleged civil rights violation has been committed. Therefore, Complainant's charge was not timely filed.

Since the action occurred more than 300 days before the charge was filed, EEOC also lacks jurisdiction to investigate this case.

**Count J:**

**Closed**

FILED DATE: 3/2/2022 9:50 AM 2021L002040

Charge No. 2021CR0061
Page 16 of 22

**Findings Counts K&L:**



Complainant alleges that in June 2018 Respondent hired her as a Contractor through a temporary agency, Inside Global, and a few weeks later she received a permanent assignment at Respondent. Complainant alleges that in July 2020[2] Respondent issued a written warning. Complainant further alleges that similarly situated male (Count K) individuals who were non-black (Count L) were not issued a written warning under similar circumstances. Complainant alleges that after the interaction with Moran about her desk she was called into the office later that day and was issued a written reprimand.

Respondent maintains that Complainant was issued a written warning for being unprofessional and not following directions. Respondent maintains that the written warning was not just because of the desk but there were other reasons that lead up to it, and it was the next step in the discipline process.

**Staff Note:** In Respondent's position statement, Respondent maintains that on July 31, 2019, which was less than two weeks after being hired, Complainant was appropriately issued a last and final warning, due to her past unprofessional behavior and the incident regarding the placement of her desk, during which Complainant became argumentative, in violation of the Company's Standards of Conduct and Rules for Personal Conduct policy violations.

Respondent's memorandum addressed to Complainant dated July 31, 2019, **(Exhibit G)** indicates that Complainant was informed that as a Contract Admin within Respondent's organization she was expected to be an example of professionalism and a positive representation of the company. In the memo, Complainant was informed that shortly after her transition to a permanent part of the team, they noticed a change in her behavior, challenging authority or direction and becoming critical of other personnel within the organization. In the memo, Complainant was informed that she had been previously verbally counseled regarding her professionalism and negative criticism in the workplace and her behavior had continued and was causing an uncomfortable work environment for those around her. In the memo, Complainant was informed that moving forward, the expectations were for her to treat all employees with respect and support the common goals as part of the team; and the letter was serving as a last and final warning and further oversights or infractions would result in additional disciplinary action, up to and including termination.

The investigation revealed, and Complainant concedes, that Complainant was issued the written warning after the incident with requesting her desk be moved. Although Complainant alleges that in July 2020, she requested an accommodation to have her desk situated against the wall, the investigation revealed that Complainant requested to have her desk moved in July 2019. Further, although Complainant alleges that in July 2020 she was issued a written warning, the investigation revealed and the evidence shows, that on July 31, 2019, Complainant was issued a last and final written warning. On December 1, 2020, Complainant filed her charge, over 400 days after Complainant's alleged harm.

---

[2] Although Complainant alleges that in July 2020 she received a written warning, the investigation revealed that in July 2019 Respondent issued Complainant a last and final written warning.

FILED DATE: 3/2/2022 9:59 AM  2022L002040

Charge No. 2021CR3901
Page 11 of 23



Section 7A-102(A)(1) of the Human Rights Act states that a charge must be filed within 300 days after the date an alleged civil rights violation has been committed. Therefore, Complainant's charge was not timely filed.

Since the action occurred more than 300 days before the charge was filed, EEOC also lacks jurisdiction to investigate this case.

**Counts M,N,O,P:**

**Closed**

**Complainant's Allegations-Counts O&R:**

Complainant alleges that in June 2018 Respondent hired her as a Contractor through a temporary agency, Inside Global, and a few weeks later she received a permanent assignment at Respondent. Complainant alleges that on August 18, 2020, Respondent suspended her, pending investigation, for allegedly falsifying federal documents due to her sex, female (Count Q) and/or race, black (Count R) . Complainant further alleges that similarly situated individuals who were sex, male and/or non-black were not suspended under similar circumstances.

**Respondent's Defenses-Counts O&R:**

Respondent maintains that its legitimate, non-discriminatory reason for suspending Complainant on August 19, 2020, is due to inconsistencies with tax forms, and it was found that Complainant had altered, or re-created addresses on tax forms for two new hires.

**Investigation Summary-Counts O&R:**

    **A.**   **Complainant's Evidence.**

        1.   See Complainant's Evidence Counts A-P.

        2.   Complainant stated that in August 2020 she was called in under investigation. Complainant stated that she asked how long the investigation was going to take place. Complainant stated that Respondent accused her of falsifying federal documents, a W-4 form for a new hire.

        3.   Complainant stated that on August 18, 2020, she was suspended pending investigation.

        4.   Complainant stated that on August 24, 2020, she requested FMLA, which was granted on August 28, 2020.

    **B.**   **Respondent's Evidence.**

        1.   See Respondent's Evidence Counts A-P.

FILED DATE: 3/2/2022 9:59 AM   2022L002040

Charge No.: 2021CR0061
Page 12 of 12



2.  Gardner stated that the payroll department brought it to the attention of human resources and contract management that there were inconsistencies with tax forms which made payroll look back the forms. Gardner stated that they looked into the inconsistencies and found that Complainant had altered, or re-created addresses on tax forms for two new hires.

3.  Gardner stated that they conducted an investigation and suspended Complainant for the remaining of the investigation.

4.  Complainant's Personnel Action Form (Exhibit H) indicates that effective August 19, 2020, Complainant was suspended. No reason is identified.

5.  Gardner stated that Complainant was suspended for two days. Gardner stated that Complainant took time to get a procedure done consistent with FMLA (Family Medical Leave Act) and Complainant remained on leave during the investigation.

6.  Gardner stated that there have been others suspended for the same reasons.

**Staff Note:** On September 13, 2021, staff emailed Respondent's attorney a Request for Further Information requesting that Respondent provide documentation of similarly situated non-black, male employees who were suspended for the same or similar reasons as Complainant between September 2018 and September 2020. On September 30, 2021, staff emailed Respondent's attorney a follow-up reminder to submit the requested documents no later than October 6, 2021, and that failure to provide the information would be construed against them and the Department would make a determination with the information already on hand. On October 5, 2021, Respondent's attorney responded to the request informing staff to refer to Exhibit 4-Employee Information. Respondent's Exhibit 4-Employee Information indicates individuals who have been discharged for the same or similar reasons, which is exhibited in Counts W&X. Respondent did not provide evidence showing those who were suspended for the same or similar reasons.

C.  **Complainant's Rebuttal**

1.  Complainant did not provide any additional information other than what was previously identified in Complainant's section.

**Analysis-Counts Q&R:**

It is uncontested that in June 2019 Respondent hired Complainant on as a permanent Administrative Assistant. Complainant alleges that on August 18, 2020, Respondent suspended her, pending investigation, for allegedly falsifying federal documents, due to her sex, female and/or race, black.

Respondent maintains that effective August 19, 2020, Complainant was suspended, pending investigation, due to inconsistencies with tax forms, and it was found that Complainant had altered,

FILED DATE: 3/2/2022 9:59 AM 2021L002040

Claim No. 2021CN0001
Page 11 of 31

or re-created addresses on tax forms for two new hires. Respondent further maintains, and Complainant alleges, that after the suspension was issued, Complainant went on FMLA.

**Findings and Conclusions-Counts Q&R:**

A finding of **Lack of Substantial Evidence** is recommended because Complainant has failed to identify a similarly situated non-black and/or male individual who was not suspended under the same or similar circumstances. Furthermore, Complainant has failed to show that Respondent issued her a suspension due to an illegitimate, discriminatory reason. There is no evidence that supports Complainant's claim that on August 18, 2020, Respondent suspended Complainant due to her sex and/or race.

**Counts S,T,U,V:**

Closed

**Complainant's Allegations-Counts W&X:**

Complainant alleges that in June 2018 Respondent hired her as a Contractor through a temporary agency, Inside Global, and a few weeks later she received a permanent assignment at Respondent. Complainant alleges that on October 30, 2020, Respondent discharged her due to her sex, female (Count W) and/or race, black (Count X). The reason given was that the outcome of Respondent's investigation revealed that Complainant falsified federal documents. Complainant further alleges that similarly situated individuals under the who were sex, male and/or non-black were not discharged under similar circumstances.

**Respondent's Defenses-Counts W&X:**

Respondent maintains that its legitimate, non-discriminatory reason for discharging Complainant is due to the result of an investigation revealing that Complainant altered, or made changes on, W-4 tax forms without the consent of a candidate.

**Investigation Summary-Counts W&X:**

A.   **Complainant's Evidence.**

1.   See Complainant's Evidence Counts A-V.

2.   Complainant stated that on October 30, 2020, she received a Fed-Ex letter informing her of her discharge. Complainant stated that she does not know if she was under investigation while on leave.

3.   Complainant stated that she thinks that she was discharged based on her race and sex; she cannot say that it was due to her age or disability.

B.   **Respondent's Evidence.**

FILED DATE: 3/2/2022 9:59 AM 2021L002040

Charge No. 5031C00061
Page 14 of 21



1.   See Respondent's Evidence Counts A-V.

2.   Respondent's Retaliation Policy (Exhibit I) indicates that Respondent prohibits retaliation against any person who, in good faith, reports a complaint, testifies, assists, or participates in any investigation or proceeding conducted by Respondent or a government enforcement agency. The policy indicates that employees who engage in retaliatory behavior will be subject to disciplinary action, up to and including termination.

3.   Respondent's Rules for Personal Conduct (Exhibit J) indicates that major rules offenses leading to discharge, if warranted after unpaid suspension and management investigation, include falsification or unlawful concealment, removal, mutilation, or destruction of any official documents or records, or concealment of material facts by willful omissions from official documents or records, or concealment of material facts by willful omissions from official documents or records to include government documents including I39s.

4.   Respondent's Discipline and Termination Policy (Exhibit K) indicates that when any employee fails to meet Respondent's and/or client's expectations, Respondent may end the employment relationship. The policy indicates that misconduct is not permitted in a security organization and generally will be cause for termination by Respondent.

5.   Gardner stated that they concluded the investigation and made a decision while Complainant was on FMLA. Gardner stated that the result of the investigation revealed that Complainant altered, or made changes on, W-4 tax forms without consent of the candidate.

6.   Gardner stated that she along with the Office of Professional Responsibility made the decision to discharge Complainant based on Complainant falsifying federal documents. Gardner stated that Complainant was notified of her discharge by a written letter sent via FedEx on October 30, 2020.

7.   Complainant's Personnel Action Form (Exhibit L) indicates that effective October 30, 2020, Complainant was discharged for Reason Code "58" and the last day worked was August 18, 2020.

8.   Respondent's letter addressed to Complainant from Kameka Jernigan (female), Investigator/Office of Professional Responsibility, dated October 30, 2020, (Exhibit M) indicates that Jernigan expressed to Complainant that she was writing to notify her that effective immediately, her employment with Respondent was terminated. In the letter, Jernigan expressed to Complainant that the action was taken in accordance with her offer letter dated June 19, 2019, which dictated that her employment was at-will and may be terminated with or without cause; and although while no cause is required, there were concerns about Complainant's conduct that prompted

them to make the decision. In the letter, Jernigan expressed to Complainant that their primary concern is that Complainant falsified and/or tampered with W-2 tax forms for new hire applicants, and an investigation revealed that Complainant submitted the tax forms to payroll that contained incorrect information. In the letter, Jernigan expressed to Complainant that she was reassigned from recruitment duties, yet she continued to be in contact with applicants to handle their packets. In the letter, Jernigan expressed to Complainant that in the initial interview she denied making alterations or submitting W-4 tax forms on behalf of new hire applicants as well as performing recruitment duties after being reassigned; however, during a subsequent interview Complainant admitted making a correction on an applicant's tax form by placing an electronic signature on the document because she thought the applicant did not sign or date it. In the letter, Jernigan expressed to Complainant that within their organization, her position is a position of trust and confidence and they were unable to maintain the necessary trust in the face of Complainant's actions, leaving them no choice but to separate her employment immediately.

9. Gardner stated that there have been others discharged for the same reasons.

10. Jernigan's letter addressed to Sasan Kouchekpour (non-black, male) dated December 23, 2019, (Exhibit N) indicates that Jernigan expressed to Kouchekpour that she was writing to notify him that effective immediately, his employment with Respondent was terminated. In the letter, Jernigan expressed that it was determined that on December 2, 2019, he falsified an official time record; and the investigation revealed that he utilized a knife to remove the ink on the document in order to change another employee's time entry and made multiple copies of the altered document in an effort to present it as the original. In the letter, Jernigan expressed to Kouchekpour that his employment was being terminated for violating both the FPS SMARTBook and Respondent's handbook Rules for Personal Conduct.

11. Jernigan's letter addressed to Jesus Marchese (non-black, male) dated March 19, 2020, (Exhibit O) indicates that Jernigan expressed to Marchese that she was writing to notify him that effective immediately, his employment with Respondent was terminated. In the letter, Jernigan expressed that it was determined that on March 4, 2020, he falsified the 139; and during Respondent's investigation it was revealed that he arrived 48 minutes late to his assigned shift without prior notification to a supervisor, and upon his arrival he proceeded to sign in at a time different from his actual arrival time. In the letter, Jernigan expressed to Marchese that he failed to follow proper procedure to notify his supervisor and in signing the 139; and failed to properly secure a building resulting in a security breach.

12. Jernigan's letter addressed to Joseph Martino (non-black, male) dated November 1, 2019, (Exhibit P) indicates that Jernigan expressed to Martino that she was writing to notify him that effective immediately, his

FILED DATE: 3/2/2022 9:59 AM    2022L002040

FILED DATE: 3/2/2022 9:59 AM 2021L002040

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS



IN THE MATTER OF:

Vanessa Tabor

Complainant,

And

Paragon Systems, Inc.

Respondent.

Charge No.: 2021CR0861
EEOC No.: n/a

### NOTICE OF ADMINISTRATIVE CLOSURE

TO: Vanessa Tabor
c/o Kendra Spearman
Spearman Law, LLC
150 S. Wacker Dr., 24th Fl.
Chicago, IL 60606

Paragon Systems, Inc.
c/o Jackeline Lara
Securitas Security Services USA, Inc.
4330 Park Terrace Dr.
Westlake Village, CA 91361

Charge Number 2021CR0861 having been filed with the Department of Human Rights by Complainant against Respondent, and Complainant having submitted a written request to withdraw the following parts of the charge pursuant to the Department's Rules and Regulations:

1. Harassment due to age and disabilities (depression, anxiety and breast cancer);
2. Written warning due to age and disabilities (depression, anxiety and breast cancer);
3. Suspension due to age and disabilities (depression, anxiety and breast cancer); and
4. Discharge due to age and disabilities (depression, anxiety and breast cancer).

You are hereby NOTIFIED that Complainant's request to withdraw is approved and that the parts of the charge specified above are hereby administratively closed. The Department will take no further action with regard to these allegations.

The Department shall continue to process all remaining allegations in accordance with the Department's Rules and Regulations.

ENTERED THIS 24th DAY OF NOVEMBER, 2021.

DEPARTMENT OF HUMAN RIGHTS

BY: Maria Juarez, Investigations Supervisor

PARTCLOS.doxm
3/15

FILED DATE: 3/2/2022 9:59 AM 2022L002040

Charge No. 2021CN0061
Page 16 of 21

employment with Respondent was terminated. In the letter, Jernigan expressed to Martino that it was determined that on October 17, 2019, he falsified an official time record; and during the investigation it was revealed that he arrived nine minutes late to his shift without notification, and upon arrival he signed in at a time different from his actual arrival time causing a discrepancy. In the letter, Jernigan expressed to Martino that throughout the course of his shift he has failed to dress in proper uniform, utilized multiple personal electronics and watched television.

13. Jernigan's letter addressed to James Olsen (non-black, male) dated January 2, 2020, (Exhibit Q) indicates that Jernigan expressed to Olsen that she was writing to notify him that effective immediately, his employment with Respondent was terminated. In the letter, Jernigan expressed to Olsen that he was suspended on December 17, 2019, after the company received a negative post inspection stating that he falsified an official time record on November 11, 2019. In the letter, Jernigan expressed that the investigation revealed that he signed out on the supervisory log at the same time in which he claimed to have reported to another post.

14. Jernigan's letter addressed to Robert Luke (black, male) dated December 23, 2019, (Exhibit R) indicates that Jernigan expressed to Luke that she was writing to notify him that effective immediately, his employment with Respondent was terminated. In the letter, Jernigan expressed to Luke that it was determined that on December 15, 2019, he falsified the 139; and during the investigation it was revealed that he arrived 15 minutes late to his assigned shift without prior notification to a supervisor. In the letter, Jernigan expressed to Luke that upon his arrival he proceeded to misrepresent another employee's time entry on the 139 while signing in his arrival time.

15. Jernigan's letter addressed to Marie Howe (non-black, female) dated August 7, 2020, (Exhibit S) indicates that Jernigan expressed to Howe that she was writing to notify her that effective immediately, her employment with Respondent was terminated. In the letter, Jernigan expressed to Howe that it was determined that on August 3, 2020, that she falsified the 139; and during the investigation it was revealed that she arrived at her assigned work site and locked her duty items in her personal vehicle. In the letter, Jernigan expressed to Howe that during that time she proceeded to sign in on time for her shift, misrepresenting her ability to perform her duties.

16. Respondent's letter addressed to Thomas Quesada (non-black, male) from Jernigan dated March 19, 2020, (Exhibit T) indicates that Jernigan expressed to Quesada that she was writing to notify him that effective immediately, his employment with Respondent was terminated. In the letter, Jernigan expressed to Quesada that it was determined that on March 4, 2020, he falsified the 139; and during the investigation, it was revealed that he logged on the 139 for both him and his partner relieved another

Charge No. 2021CN0061
Page 17 of 22



office from duty even though they were aware that his ... office was arriving into for their shift. In the letter, Jernigan expres... is ... ... during the course of his shift, he failed to properly secure a building resulting in a security breach.

C.    **Complainant's Rebuttal.**

    1.    Complainant did not provide any additional information other than what was previously identified in Complainant's section.

**Analysis-Counts W&X:**

It is uncontested that in June 2019 Respondent hired Complainant on as a permanent Administrative Assistant. Complainant alleges that on October 30, 2020, Respondent discharged her due to her sex, female and/or race, black.

Respondent maintains that effective August 19, 2020, Complainant was suspended, pending investigation, due to inconsistencies with tax forms, and it was found that Complainant had altered, or re-created addresses on tax forms for two new hires. The evidence shows, and Respondent maintains, that effective October 30, 2020, Complainant was discharged due to the result of an investigation revealing that Complainant altered, or made changes on, W-4 tax forms without the consent of a candidate.

The evidence shows that on December 23, 2019, Kouchekpour (non-black, male) was discharged for falsifying an official time record; on March 19, 2020, Marchese (non-black, male) was discharged for falsifying the 139; on November 1, 2019, Martino (non-black, male) was discharged for falsifying an official time record; on January 2, 2020, Olsen (non-black, male) was discharged after Respondent received a negative post inspection stating that he falsified an official time record; on December 23, 2019, Luke (black, male) was discharged for falsifying the 139; on August 7, 2020, Howe (non-black, female) was discharged for falsifying the 139; and on March 19, 2020, Quesada (non-black, male) was discharged for falsifying the 139.

Respondent's Personal Conduct Policy indicates that major rules offenses leading to discharge, if warranted after unpaid suspension and management investigation, include falsification or unlawful concealment, removal, mutilation, or destruction of any official documents or records, or concealment of material facts by willful omissions from official documents or records, or concealment of material facts by willful omissions from official documents or records to include government documents including 139s.

**Findings and Conclusion-Counts W&X:**

A finding of **Lack of Substantial Evidence** is recommended because is recommended because Complainant has failed to identify a similarly situated non-black and/or male individual who was not discharged under the same or similar circumstances. Furthermore, Complainant has failed to show that Respondent discharge her due to an illegitimate, discriminatory reason. The evidence shows, and Respondent maintains, that there were other employees discharged for the same or similar reasons. The evidence shows that between November 1, 2019, and August 7, 2020,

Charge No. 2021CR0601
Page 16 of 22



Respondent discharged seven other individuals for falsifying documents, of which six were male, and seven were non-black. There is no evidence that supports Complainant's claim that on August 18, 2020, Respondent discharged Complainant due to her sex and/or race.

## Counts Y,Z,AA:

Closed

## Complainant's Allegations-Count BB:

Complainant alleges that in June 2018 Respondent hired her as a Contractor through a temporary agency, Inside Global, and a few weeks later she received a permanent assignment at Respondent. Complainant alleges that in March 2020 she reported harassment and in July 2020 she requested a reasonable accommodation. Complainant alleges that on October 30, 2020, Respondent discharged her. Complainant alleges that Respondent's adverse action occurred within such a period of time of her report of harassment and request for an accommodation as to raise an inference of retaliatory motivation.

## Respondent's Defenses-Count BB:

Respondent maintains that its legitimate, non-discriminatory reason for discharging Complainant is due to the result of an investigation revealing that Complainant altered, or made changes on, W-4 tax forms without consent of a candidate.

## Investigation Summary-Count BB:

A.    **Complainant's Evidence.**

1.    See Complainant's Evidence Counts A-AA.

B.    **Respondent's Evidence.**

1.    See Respondent's Evidence Counts A-AA.

C.    **Complainant's Rebuttal.**

1.    Complainant did not provide any additional information other than what was previously identified in Complainant's section.

## Analysis-Count BB:

It is uncontested that in June 2019 Respondent hired Complainant on as a permanent Administrative Assistant. Complainant alleges that in March 2020 she reported harassment to Respondent's management and in July 2020 she requested a reasonable accommodation. Complainant alleges that on October 30, 2020, Respondent discharged her in retaliation for reporting harassment and requesting an accommodation.

FILED DATE: 3/2/2022 9:59 AM   2021L002040

Charge No. 1A1CR18061
Page 11 of 12

Respondent maintains that effective August 19, 2020, Complainant was suspended, pending investigation, due to inconsistencies with tax forms, and it was found that Complainant created, or re-created addresses on her focus for two new hires. The evidence shows, and Respondent maintains, that effective October 30, 2020, Complainant was discharged due to the result of an investigation revealing that Complainant altered, or made changes on, W-4 tax forms without the consent of a candidate. Respondent further maintains that Complainant never reported harassment or requested an accommodation. The investigation revealed that Complainant's alleged request for an accommodation occurred in July 2019.

The evidence shows that on December 23, 2019, Kouchekpour was discharged for falsifying an official time record; on March 19, 2020, Marchese was discharged for falsifying the 139; on November 1, 2019, Martino was discharged for falsifying an official time record; on January 2, 2020, Olsen was discharged after Respondent received a negative post inspection stating that he falsified an official time record; on December 23, 2019, Luke was discharged for falsifying the 139; on August 7, 2020, Howe was discharged for falsifying the 139; and on March 19, 2020, Quesada (non-black, male, under 40) was discharged for falsifying the 139.

Respondent's Personal Conduct Policy indicates that major rules offenses leading to discharge, if warranted after unpaid suspension and management investigation, include falsification or unlawful concealment, removal, mutilation, or destruction of any official documents or records, or concealment of material facts by willful omissions from official documents or records, or concealment of material facts by willful omissions from official documents or records to include government documents including 139s.

### Findings and Conclusion-Count BB:

A finding of **Lack of Substantial Evidence** is recommended because Complainant has failed to show a nexus between her involvement in a protected activity and her discharge. Complainant alleges that in March 2020 she reported harassment, seven months prior to her discharge; and in July 2020 she requested an accommodation; however, the investigation revealed that Complainant requested the alleged accommodation in July 2019, one year prior to her discharge. Therefore, Complainant has failed to show Respondent discharged her within such a period of time to raise an inference of retaliatory motivation. Furthermore, Complainant has failed to show that Respondent discharged her due to an illegitimate reason. The evidence shows, and Respondent maintains, that there were other employees discharged for the same or similar reasons as Complainant. The evidence shows that between November 1, 2019, and August 7, 2020, Respondent discharged seven other individuals for falsifying documents, of which none were identified as having engaged in a protected activity. There is no evidence that supports Complainant's claim that on October 30, 2020, Respondent discharged Complainant in retaliation for engaging in a protected activity.

### Witness List:

**For Complainant:**
Vanessa Tabor
c/o Kendra Spearman
Spearman Law
150 S. Wacker Dr. 24th Floor

**For Respondent:**
Paragon Systems, Inc.
c/o Jackeline Lara
Securitas Security Services USA, Inc.
4330 Park Terrace Dr.

FILED DATE: 3/2/2022 9:59 AM 2022L002040

* 5 0 1 6 6 9 9 7 *

Chicago, IL 60606
(312) 788-2602
kendra@spearmanlaw.com

Westlake Village, CA 91361
(818) 706-5066
jackeline.lara@securitasinc.com

**A.** Complainant (CPI)
c/o Kendra Spearman
Spearman Law
150 S. Wacker Dr. 24th Floor
Chicago, IL 60606
(312) 788-2602
kendra@spearmanlaw.com

**Staff Note:** In Complainant's response to the Complainant's Questionnaire, Complainant listed the following witnesses: Antonio Tolan/ 10061 S. Hill Terrace/ Palos Hills, IL 60465/ (708) 527-8950; Dwayne Presswood/ 6344 S. Champlain Ave/ Chicago, IL 60637/ (773) 367-0760; Jerome McClain/ 8906 S. Eggleston Ave./ Chicago, IL 60620/ (312) 383-0197; Shawonta Massey/ 231 Pleasant Street/ Joliet, IL 60436/ (815) 582-2922; Charlotte Elfenbaum/ 860 S. Park Terrace/ Chicago, IL 60605/ (312) 914-1323; Bryan Carey/ 402 Cherry Valley Road/ Vernon Hills, IL 60061/ (312) 485-9733; Don Reyna/ 7114 167th St. Apt. 1/ Tinley Park, IL 60477/ (708) 845-1304; Jerome McKinney/ 135 W. 109th St./ Chicago, IL 60628/ (773) 484-3855; Michael Coates (no known address)/ (312) 298-9004; Shemyra Tabor/ 414 W. Goethe St. Apt. 102/ Chicago, IL 60610/ (312) 285-2491; Billina McCoy/ 7923 S. Union-1st Floor Rear/ Chicago, IL 60620/ (708) 446-8489; Felix Carter/ 2959 N. Laramie/ Chicago, IL 60641/ (773) 266-7583; and Shane McHenry/ 6148 W. 63rd St./ Chicago, IL 60628/ (773) 953-6325. In the Questionnaire, Complainant expressed that each of the witnesses could affirm that Moran harassed her by either speaking to her in a demeaning and callous manner, making derogatory statements about her, assassinating her character and intelligence, attempting to undermine her professional expertise and work ethic and was dogmatic in his overseeing of her daily tasks and special assignments.

The Questionnaire states that it is important to give detail to what each witness would tell staff during the investigation, such as, what the witness saw, heard or experienced that would support any allegations. Since Complainant failed to specify which details each witness could provide, failed to show that Moran's actions were egregious or discriminatory in nature, and since Complainant has failed to show, and conceded, that Moran did not make any direct, demeaning comments to her regarding her race or sex, contacting the witnesses would not have altered the Department's finding. Further, Complainant did not specify that the witnesses listed could provide information regarding her other allegations. Therefore, the witnesses were not contacted.

**B.** Bryttany Gardner (Telephone interview)
c/o Jackeline Lara
Securitas Security Services USA, Inc.
4330 Park Terrace Dr.
Westlake Village, CA 91361
(818) 706-5066
jackeline.lara@securitasinc.com

**C.** Peter Moran (Telephone interview)

FILED DATE: 3/2/2022 9:59 AM 2021L002040

Charge No. 2021CR0860
Page 11 of 12

c/o Jackaline Lara
Securitas Security Services USA, Inc.
4530 Park Terrace Dr.
Westlake Village, CA 91361
(818) 706-5066
jackaline.lara@securitasinc.com



**Exhibits:**

A.  Respondent's Employment Data

B.  Respondent's Equal Employment Opportunity-Affirmative Action Policy Statement

C.  Respondent's Harassment and Intimidation Policy

D.  Respondent's Administrative Assistant Job Description

E.  Complainant's Clinical Visit Summary for visit date February 8, 2021

F.  Respondent's Non-Discrimination on the Basis of Disabilities Policy

G.  Respondent's memorandum addressed to Complainant dated July 31, 2019

H.  Complainant's Personnel Action Form signed on August 21, 2020

I.  Respondent's Retaliation Policy

J.  Respondent's Rules for Personal Conduct

K.  Respondent's Discipline and Termination Policy

L.  Complainant's Personnel Action Form signed on November 13, 2020

M.  Jernigan's letter addressed to Complainant dated October 30, 2020

N.  Jernigan's letter addressed to Sassan Kouchekpour dated December 23, 2019

O.  Jernigan's letter addressed to Jesus Marchese dated March 19, 2020

P.  Jernigan's letter addressed to Joseph Martino dated November 1, 2019

Q.  Jernigan's letter addressed to James Olsen dated January 2, 2020

R.  Jernigan's letter addressed to Robert Luke dated December 23, 2019

S.  Jernigan's letter addressed to Marie Howe dated August 7, 2020



Charge No. 2021CN4941
Page 23 of 23

T. Jernigan's letter addressed to Thomas Quesada dated March 19, 2020

ISSHELL
Rev. 10/2020